| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| NUSSBAUM APC<br>Lane M. Nussbaum, SBN 264200<br>Wayne M. Abb, SBN 91625<br>Richard J. Uss SBN 273871<br>27489 Agoura Road, Ste. 102<br>Agoura Hills, California 91301<br>Tel. (818) 660-1919 \| Fax. (818) 864-3241<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  Gwendolyn Nolan | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| IN RE:<br>WILLIAM K. SPENCER,<br><br>Debtor.<br><br><br>———————————————————— –<br><br>GWENDOLYN NOLAN<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM K. SPENCER<br><br>Defendant | Adv. Case No.: 2:20-ap-01103-BB<br>Case No.: 2:20-bk-10401-BB<br>Ch: 7 |
|---|---|
| | AMENDED NOTICE OF MOTION FOR:<br>MOTION LEAVE TO AMEND COMPLAINT;<br>MEMORANDUM OF POINTS AND AUTHORITIES;<br>DECLARATION OF RICHARD J. USS<br><br><br>(Specify name of Motion) |
| | DATE:  April 20, 2021<br>TIME:  2:00 pm<br>COURTROOM: 1539<br>PLACE: 255 East Temple Street<br>        Los Angeles, California 90012 |

1. TO (*specify name*):  THE HONORABLE SHERI BLUEBOND AND ALL INTERESTED PARTIES:

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 1                          **F 9013-1.1.HEARING.NOTICE**

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  03/23/2021

NUSSBAUM APC
Printed name of law firm

/s/ Lane Nussbaum
Signature

Lane Nussbaum
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                               Page 2                         **F 9013-1.1.HEARING.NOTICE**

NUSSBAUM APC
Lane M. Nussbaum, SBN 264200
Wayne M. Abb, SBN 91625
Richard J. Uss SBN 273871
27489 Agoura Road, Ste. 102
Agoura Hills, California 91301
Tel. (818) 660-1919 | Fax. (818) 864-3241

Attorneys for Plaintiff Gwendolyn Nolan

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| IN RE:<br><br>WILLIAM K. SPENCER,<br><br><div align="right">Debtor.</div><br>_____<br><br>GWENDOLYN NOLAN,<br><br><div align="center">Plaintiff,</div><br>vs.<br><br>WILLIAM K. SPENCER,<br><br><div align="center">Defendant.</div> | Case No.: 2:20-bk-10401-BB<br>Adv. Case. No.: 2:20-ap-01103-BB<br><br>**MOTION FOR LEAVE TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD J. USS**<br><br>**Date:** April 20, 2021<br>**Time:** 2:00 pm<br>**Place:** 255 East Temple Street<br>Los Angeles, California,<br>Courtroom 1539 |

TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY

JUDGE, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

COMES NOW, GWENDOLYN NOLAN ("Nolan") and respectfully requests that

this Honorable Court issue an Order granting Nolan leave to file an Amended Complaint in

the adversarial action bearing Case Number 2:20-ap-01103-BB, attached to the declaration

of Richard J. Uss.

-1-
**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

1

2

3

4

5

6

This Motion is based upon the fact that: (1) Defendant/Debtor William K. Spencer has not yet made his initial disclosures pursuant to Fed. R. Civ. P. 26; (2) Defendant/Debtor William K. Spencer has filed a Notice of Appeal of this Honorable Court's denial of Defendant/Debtor William K. Spencer's Motion for Judgment on the Pleadings [Dockt. No. 51]; and (3) Plaintiff intends to file a First Amended Complaint pursuant to F.R.B.P. 7015(a)(2), to which Debtor would not stipulate.

7

8

9

10

This Motion is based on the attached Memorandum of Points and Authorities, the Declaration of Richard J. Uss, filed concurrently herewith, the proposed Amended Complaint attached to the Declaration of Richard J. Uss as Exhibit 1, the entirety of the Court's file and any oral argument offered in support thereof, if necessary.

11

12

WHEREFORE, Nolan respectfully requests that this Court enter an Order granting Nolan leave to file an amended Complaint.

13

Dated: March 23, 2021                                    NUSSBAUM APC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Lane Nussbaum
_____
Lane Nussbaum
Attorneys for Plaintiff Gwendolyn Nolan

**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

## MEMORANDUM AND POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Gwendolyn Nolan ("Nolan") initiated this instant adversarial complaint to declare the debt that Debtor William K. Spencer ("Debtor") incurred to Nolan non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) [Dockt. No. 1].

On or about January 27, 2021, Nolan filed the appropriate Motion to Compel Debtor's Initial Disclosures Pursuant to Fed. R. Civ. P. Rule 37 [Dockt. No. 22]. Throughout the majority of this adversarial action, Debtor was self-represented.   On February 2, 2021, Debtor's counsel substituted into this matter. [Dockt. No. 24].   Nolan's Motion to Compel was granted and Debtor was ordered to provide Nolan with Debtor's initial disclosures within fourteen (14) days of the entry of this Honorable Court's Order [Dockt. 47].

Additionally, Debtor filed a Motion for Judgment on the Pleadings [Dockt. No. 25], which was denied on February 23, 2021.   Thereafter, Debtor filed a Notice of Appeal on March 9, 2021 [Dockt. No. 40].

In order to accommodate the process of justice, this Honorable Court should permit Nolan leave to file an Amended Complaint.   Nolan has not previously sought to amend the Complaint in this action and Nolan's proposed amendment neither seeks to add any additional counts nor alter Nolan's theory related to this action.   Nolan simply requests permission to allege additional facts in support of the already existing count that seeks to have Nolan's claim deemed non-dischargeable. Nothing contained within Nolan's proposed amendment will amount to an "unfair surprise" so as to amount to unfair surprise to the extent to warrant denial of this instant relief.

### II.   ARGUMENT

Rule 15 provides that Plaintiff may apply for leave to amend the complaint, and that such leave shall be freely given when justice so requires. The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or

1   answer. *See*, 6 Wright & Miller, Federal Practice and Procedure (2d ed.), Civ. §1473 Rule

2   15. Justice so requires absent factors "such as undue delay, bad faith or dilatory motive on

3   the part of the movant…undue prejudice to the opposing party by virtue of allowance of the

4   amendment, [or] futility of the amendment, etc.," which are wholly absent here. *Foman v.*

5   *Davis*, 371 U.S. 178, 182 (1962); *See also*, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d

6   531 (9th Cir. 1989) While decisions regarding leave to amend are left to the court's

7   discretion, "there must be good reason to deny the motion." *Acito v. IMCERA Grp., Inc.*, 47

8   F.3d 47, 55 (2d Cir. 1995) (citation omitted).

9        Amendments are permitted

10       Essentially, in order to defeat this Motion, Debtor must overcome this permissive

11  standard and strong preference for resolving claims on their merits and meet their burden of

12  demonstrating bad faith, prejudice, or futility.  Here, Debtor cannot do so, and the balances

13  weigh in favor of permitting Nolan to amend the operative Complaint as set forth in the

14  Amended Complaint attached hereto as Exhibit 1.

15       **A.     <u>Debtor Cannot Demonstrate Any Prejudice by Virtue of the Proposed</u>**

16          **<u>Amendment</u>**

17       "[I]t is the consideration of prejudice to the opposing party that carries the greatest

18  weight." *Reveal Chat Holdco, LLC v. Facebook, Inc.* (N.D. Cal. 2020) 471 F.Supp.3d 981,

19  990 (citations omitted.)

20       Debtor will not be prejudiced (unduly or otherwise) by Nolan's proposed

21  amendment of the Complaint for a number of reasons. Here, Debtor has been on notice of

22  Nolan's contentions and assertations in this case concerning the incident giving rise to this

23  adversarial action well in excess of a year and nothing contained in this matter is new or

24  novel to Debtor, as it was the subject of the underlying state matter that had been litigated in

25  in arbitration (albeit Debtor inexorably failed to appear at the arbitration hearing).

26       By the virtue of the amended Complaint, Nolan does not seek to proceed on a new

27  theory; Nolan's ultimate theory related to the non-dischargeability of the arbitration award

28  remains unchanged. Debtor himself has demonstrated his own knowledge of the allegations

-4-
**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

pending in this adversarial action by the virtue of the arguments raised in Debtor's Motion for Judgment on the Pleadings filed in this matter [Dockt. No. 25]. Moreover, the proposed amendments to Nolan's Complaint do not seek to add additional counts related to the non-dischargeability of Debtor's debt, but solely for the purpose of clarifying and expounding upon those allegations already set forth in the operative Complaint by the inclusion of additional facts.

Thusly, Debtor is not required to change his position or circumstances, and nothing contained in the proposed amended complaint permits Debtor to claim an unfair surprise that might constitute legal prejudice that would warrant denial of the relief Nolan seeks.

### B.    Nolan's Amended Allegations are not Futile

As this Court noted in denying Debtor's Motion for Judgment on the Pleadings, Nolan has advanced a viable theory upon which it could be determined that Debtor had defrauded Nolan with respect to that work that Debtor had promised to Nolan.  Nolan's determination to amend the operative Complaint is, in and of itself, due to the need that there be a clear statement of facts in support of Nolan's claims as against Debtor in this matter, as previously observed by this Honorable Court at the hearing on Debtor's Motion for Judgment on the Pleadings.

In sum, under the permissive standard that applies, and in light of the above judicial assessments of Nolan's central allegations to date, Debtor cannot establish that the proposed amendments to Nolan's claims against Debtor are clearly frivolous or that Nolan does not have at least colorable grounds for relief. Accordingly, this Motion should be granted.

### C.    Debtor has declined to stipulate to Nolan Amending the Operative Complaint

Prior to the filing of this instant Motion, Nolan requested that Debtor enter into a stipulation concerning Nolan amending the operative complaint. While Debtor notified Nolan that Debtor would not stipulate to Nolan amending the Complaint, most likely Debtor would not oppose Nolan's Motion, thereby necessitating this instant motion.

**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

1

## III.    <u>CONCLUSION</u>

2

For the foregoing reasons, Nolan respectfully requests that the Court grant Nolan

3

leave to file an Amended Complaint in the form of the proposed Amended Complaint

4

appended as Exhibit 1 to the accompanying declaration of Richard J. Uss.

5

Dated: March 23, 2021

6

NUSSBAUM APC

7

8

9

<u>/s/ Lane Nussbaum</u>

By:  Lane Nussbaum

10

Attorneys for Plaintiff Gwendolyn
Nolan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

## DECLARATION OF RICHARD J. USS

I, Richard J. Uss, declare as follows:

1.      I am an attorney, licensed before all Courts in California and am an associate at Nussbaum APC, counsel or record for Plaintiff Gwendolyn Nolan ("Nolan").  I have reviewed the file in this matter and I possess personal knowledge concerning the matters set forth in this declaration. I could testify to same if called upon to do so.

2.      Throughout the majority of this adversarial action, Debtor William K. Spencer ("Debtor") was been self-represented.  Debtor filed a substitution of counsel on or about February 2, 2021 [Dockt. No. 24].

3.      As Nolan had not received Debtor's initial disclosures, on or about January 27, 2021, Nolan filed a Motion to Compel Debtor's Initial Disclosures pursuant to Fed. R. Civ. P., Rule 37 [Dockt. No. 22].

4.      Nolan's Motion to Compel Debtor's Initial Disclosures was granted [Dockt. 47].  Should Debtor comply with this Honorable Court's Order, Nolan anticipates receiving Debtor's Rule 26 initial disclosures on or about March 29, 2021.

5.      On February 3, 2021, Debtor filed a Motion for Judgment on the Pleadings. Pleadings [Dockt. No. 25], which was denied on February 23, 2021.

6.      During the parties' meeting and conferring in preparation for the currently-set Pretrial Conference, Debtor's counsel informed me that, while a motion for an appellate stay had yet to be filed, Debtor intends to apply to the Bankruptcy Appellate Panel for the Ninth Circuit for a stay of this action pending Debtor's appeal in the very immediate future.

7.      Nolan desires to file an amended Complaint in this action.  A true and correct copy of the proposed Amended Complaint is attached hereto as Exhibit 1 and is incorporated herein by this reference.

8.      While Nolan is not seeking to amend the Complaint to add any additional counts, Nolan intends to amend the Complaint to plead additional facts in order to further support the already existing count in Nolan's current operative Complaint.  By the virtue of the amended Complaint, Nolan's ultimate theory regarding the non-dischargeability of that

debt related to the arbitration award remains unchanged.

9.    Debtor will not be unduly prejudiced by this Honorable Court granting the relief Nolan seeks.  Debtor is aware of those facts germane to Nolan's contention that the arbitration award is non-dischargeable, and those additional facts are not a surprise to Debtor.

10.    I met and conferred with counsel for Debtor on or about March 22, 2021, inquiring into whether or not Debtor would stipulate to permit Nolan to file an amended Complaint.  While counsel for Debtor informed me that he could not stipulate to the filing of an amended Complaint, if Nolan was to apply to this Court for leave to amend, Debtor would most likely not oppose the relief sought.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 23nd day of March, 2021, at Agoura Hills, California.

_____
Richard J. Uss

**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

**MOTION FOR ORDER FOR LEAVE TO FILE AMENDED COMPLAINT**

1
2
3
4

NUSSBAUM APC
Lane M. Nussbaum, SBN 264200
Wayne M. Abb, SBN 91625
Richard J. Uss SBN 273871
27489 Agoura Road, Ste. 102
Agoura Hills, California 91301
Tel. (818) 660-1919 | Fax. (818) 864-3241

5

Attorneys for Creditor Gwendolyn Nolan

6

7

8      **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

10

11     IN RE:

12         WILLIAM K. SPENCER,

13     Debtor.

14     _____

15     –

16     GWENDOLYN NOLAN

17              Plaintiff,

18        vs.

19     WILLIAM K. SPENCER

20              Defendant

21

22     _____

Adv. Case No.: 2:20-ap-01103-BB

Case No.: 2:20-bk-10401-BB

**[PROPOSED] AMENDED
ADVERSARY COMPLAINT
OBJECTING TO DECLARE DEBT
NON-DISCHARGEABLE PURSUANT
TO 11 U.S.C. §§ 523(a)(2), AND
523(a)(4)**

23

24     **TO THE COURT AND COUNSEL OF RECORD:**

25         Gwendolyn Nolan ("Plaintiff"), Plaintiff and Creditor of the above-named Debtor,

26     William K. Spencer ("Defendant"), hereby seeks an order from this Court declaring the debt

27     owed to her by Defendant non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) and 523(a)(4)

28     and Bankruptcy Rule 4007, and allege as follows:

1

100412209

**JURISDICTION**

1.     This Court has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. § 157(a), 157(b), and 1334(b).

2.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it concerns a determination of the dischargeability of a particular debt.

**VENUE**

3.     Venue is proper under 28 U.S.C. § 1409.

**PARTIES**

4.     Plaintiff Gwendolyn Nolan is an individual, who at all relevant times herein, is and was resident of the City of Los Angeles, County of Los Angeles, California.

5.     Defendant William K. Spencer is an individual, who at all relevant times herein, is and was resident of the City of Los Angeles, County of Los Angeles, California.

**FACTUAL ALLEGATIONS**

6.     On or about July 14, 2014 Plaintiff entered into a contract with Defendant pursuant to which Defendant would provide architectural services for a development Plaintiff intended to construct. The architectural contract stated that Plaintiff would pay to Defendant the total sum of $148,000.00, due upon a series of milestones in the proposed development project. Thereafter, Defendant requested the full $148,000 upfront, stating that the funds were needed to meet the milestones, but promising that upon receipt of the funds he would produce architectural plans sufficient to be approved for development by the City of Los Angeles.

7.     Plaintiff is an elderly individual within the meaning of 42 U.S. Code § 3058i and the Elder Justice Act of 2010.

8.     Defendant represented to Plaintiff that Defendant possessed the requisite professional knowledge and skill to perform the duties and scope of the work Defendant was retained to perform.

9.     Defendant relied upon Plaintiff's advanced age to Defendant's benefit in making such false promises as alleged herein.

2

100412209

10.      Defendant provided Plaintiff with Defendant's curriculum vitae in support of Defendant's representations related to Defendant's ability to perform the scope of work required.

11.      Defendant made such representation in an attempt to obtain unearned fees, and did not intend to produce the work product or meet the milestones promised.

12.      Believing Defendant and relying on his representations, Plaintiff paid him $147,000.00 upfront, despite the milestones not having been satisfied in accordance with the written agreement.

13.      Defendant's proposed plans so vastly deviated from what Plaintiff had contracted with Defendant for, and for a number of reasons, Defendant's plans were not approved, in part, by the Los Angeles Department of Building and Safety, as was required, for the following reasons:

a.      Defendant's plans were prepared, not for the subject site location, but for one well over a mile away;

b.      Defendant's plans for the building exceeded the elevation permitted by the County and City of Los Angeles;

c.      Defendant's plans did not include the correct number of units as contemplated by Plaintiff related to the scope of work; and

d.      Defendant's plans, as provided, called from the unit's balconies to overhang the sidewalk and adjacent street, in violation of the appropriate building codes for the County and City of Los Angeles.

14.      These particular defects identified in Defendant's proposed plans are of a basic and/or rudimentary nature that no licensed professional would have prepared or presented them as the plans in no manner or form comported with the scope of work that Plaintiff had contracted for and had no possibility of being approved by the Los Angeles Department of Building and Safety, as was required.

100412209

15.     Despite receiving the full funds upfront, Defendant has failed to produce any architectural plans which complied with the requirements of the City of Los Angeles and the Los Angeles Department of Building and Safety.

16.     In fact, based upon the manner in which the plans deviated from what Plaintiff had contracted for and reasonably expected to receive, Defendant had no intention to perform the work as contracted and intended to use the initial plans, as prepared, as part of Defendant's plan or scheme to have Plaintiff pay Defendant an additional $147,000.00 to correct the plans as necessary.

17.     At the time of contracting, on or about July 14, 2014, Defendant had no intention to prepare the plans as requested and required by Plaintiff for the initial sum paid by Plaintiff.

18.     Defendant informed Plaintiff that he would not produce such plans unless Defendant were paid an additional $147,000.00, which was refused by Plaintiff. Defendant did not, thereafter, prepare or attempt to prepare satisfactory plans in accordance with the architectural contract.

19.     Plaintiff justifiably relied upon Defendant's representations at the time of contracting based upon Defendant's representations and had no reason to then suspect that Defendant's representations were untrue due to the parties' professional relationship and Defendant's representations concerning his education, experience and standing in the field.

20.     On September 29, 2017 Plaintiff brought a lawsuit against Defendant in Los Angeles Superior Court seeking to recover damages for the breached contract and misappropriated funds, identified as Los Angeles Superior Court Case Number BC677750 (the "Civil Action"). On December 11, 2018 such action was stayed and the matter referred to binding arbitration.

21.     On June 28, 2019 a binding arbitration award was entered in favor of Gwendolyn Nolan and against William K. Spencer in the amount of $152,250.00, inclusive of attorney's fees and costs (the "Arbitration Award"). The Arbitration Award specifically found

4

100412209

that Plaintiff's damages were the result of fraud committed against her by Defendant. A true and correct copy of the Arbitration Award is attached as Exhibit 1.

22.    On January 9, 2020 Plaintiff filed a Petition to Confirm the Arbitration Award in the Civil Action. However, on January 14, 2020 Defendant filed the chapter 7 bankruptcy proceeding which is the subject of this Petition to Declare Debt Non-Dischargeable.

## **COUNT I: OBJECTION TO DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)**

23.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 above, as though set forth fully herein.

24.    Under 11 U.S.C. § 523(a)(2), an individual debtor may not discharge any debt "for money, property, services… to the extent obtained by false pretenses, a false representation, or actual fraud." Here, Defendant's debt is the consequence of a binding arbitration award, specifically finding that the Arbitration Award is compensatory damages for false pretenses, false representation, and actual fraud committed by Defendant against Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment against Defendant as follows:

1.    Declare and adjudge that any claim of Plaintiff pursuant to the Arbitration Award be exempt from discharge 11 U.S.C. § 523(a)(2); and

2.    Award such other relief as is just and equitable.


DATED: March 23, 2021                    **NUSSBAUM APC**



By: _____

Attorneys for Plaintiff
Gwen Nolan

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

100412209

Honorable Suzanne G. Bruguera (Ret.)
ADR SERVICES, INC.
915 Wilshire Boulevard, Suite 1900
Los Angeles, California 90017
(213) 683-1600 PH
Arbitrator

# ADR SERVICES, INC.

## IN THE ARBITRATION BETWEEN

GWENDOLYN NOLAN,               )    ADRS CASE NO. 19-1552-SGB-02
                              )
                Claimant,     )
                              )    ARBITRATON AWARD
        vs.                   )
                              )
WILLIAM K. SPENCER, et al.,   )
                              )
                Respondent.   )
                              )
                              )
                              )
                              )
                              )
                              )

Retired Judge of the Superior Court of the State of California for the County of Los Angeles, Hon. Suzanne G. Bruguera, the duly appointed Arbitrator, respectfully submits this Arbitration Award.

## <u>Procedural History in Arbitration</u>

1.      The parties having notified ADR Services, Inc. that retired Judge of the Superior Court for the County of Los Angeles, the Hon. Suzanne G. Bruguera, had been selected as the Proposed Arbitrator by both parties, the Arbitrator served pursuant to California Code of Civil Procedure section 1281.9, California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration,

Standard 7 et seq., and applicable statutory and case law, written disclosures for the prior 5 years with respect to prior arbitrations and private trials and for the prior 2 years with respect to prior mediations and references. A copy of the Arbitrator's Disclosure is attached as Exhibit 1.

2.      Arbitrator, pursuant to Code of Civil Procedure section 1281.9, did not take any action for 15 days giving the parties time to object after being served with the Arbitrator's Disclosure.

3.      The Arbitrator did not receive any objections to her appointment as Arbitrator presiding over this matter.

4.      On May 16, 2019, Arbitrator conducted telephonically the first Management Conference in this matter. Laurence Lishner, Esq., appeared for plaintiff. William K. Spencer, respondent, appeared for himself in propria persona.

5.      The Arbitrator informed the parties at the first Arbitration Management Conference that they may conduct discovery, and requested that the Arbitrator be provided with the pleadings filed in the Superior Court by the party who filed such pleading.

6.      The Arbitrator requested that the Arbitration Argeement also be provided in the Arbitration.

7.      The Arbitrator pursuant to agreement and stipulation by claimant's counsel, Laurence Lishner, Esq., and William K. Spencer, respondent, set the following schedule for Arbitration of the matter:

1.      July 18, 2019 at 9:00 a.m. - telephonic Final Status Conference;

2.      July 12, 2019 - Motions in limine to be filed and served by email;

3.      July 8, 2019 - filing and service by email, exhibit lists and witness lists;

4.      July 16, 2019 – filing and service of all oppositions to motions in limine, exhibit lists and witness lists.

5.      July 22, 2019 at 10:00 a.m. to 6:00 p.m. – Binding Arbitration Hearing.

6.      Stipulation that all notice and service in the matter to be by email.

8.      Arbitrator explained to respondent representing himself that he had the right to call witnesses and present exhibits at the Arbitration Hearing.

9.      Arbitrator gave written notice of all the issues discussed at the Arbitration Management Conference. The first Arbitration Management Order is attached as Exhibit 2.

10.      On July 18, 2019, Arbitrator conducted the telephonic final status conference that had been scheduled by the Arbitrator at the request of counsel and respondent representing himself. At this conference:

1.      Respondent William K. Spencer acknowledged that he had not submitted his exhibit or witness list, had not responded to discovery, had not conducted discovery, had not paid ADR Services for the arbitration services, nor had he procured any witnesses on his behalf.

2.      Respondent William K. Spencer requested that the Binding Arbitration Hearing be continued so that he could retain an expert to testify as an expert in the Binding Arbitration and to pay ADR Services' arbitration costs.

3.      Claimant objected to the continuance for the following reasons:

a.      The request to continue if granted would be prejudicial to claimant because it could have been made much earlier;

b.      Respondent had requested and had stipulated to the date selected for the binding arbitration;

c.      Respondent had already delayed the matter by seeking arbitration of the matter late in the litigation of the matter while the matter was pending in the Superior Court;

d.      Respondent could not name the expert he intended to retain nor could he explain why he had not contacted the expert earlier; and

e.    This matter while in the Superior Court was scheduled for trial on December 17, 2018. At the Final Status Conference, respondent stated for the first time before the Hon. Ruth Ann Kwan that this matter should be arbitrated. Judge Kwan indicated that perhaps respondent had waived his right to have arbitration because he failed to request arbitration at the commencement of the litigation. Claimant's counsel represented that had respondent requested arbitration when the case was filed, claimant would not have objected. Claimant's counsel nevertheless agreed to have the matter proceed by binding arbitration.

11.    Arbitrator found claimant's objections to have merit, but in the interests of justice, granted respondent's request to continue the matter for a short period of time allowing time for respondent to prepare his matter for the Binding Arbitration Hearing.

12.    Arbitrator at the request of respondent continued the Binding Arbitration from July 22, 2019 to September 23, 2019. Mr. Lishner and Mr. Spencer stipulated to September 23, 2019 (60 day continuance), and waived further notice of the continuance. A telephonic Final Status Conference was set for September 17, 2019, and notice was waived.

13.    Prior to September 23, 2019, respondent did not provide the name of his expert. Respondent did not provide a copy of his exhibits. Respondent did not provide the names of his witnesses. Respondent did not contact ADR Services regarding his share of the arbitration costs. Respondent did not file nor request by email or telephone any further request for a continuance. Respondent did not contact Arbitrator nor did he contact ADR Services regarding his intentions as to the Arbitration Hearing. Respondent did not conduct discovery nor did he respond to discovery requests from claimant.

14.    Arbitrator attempted to reach respondent by telephone on September 23, 2019 before starting the Arbitration. Arbitrator left a message for respondent to call ADR Services and that the Arbitrator would wait for his call for one hour before starting the Arbitration. Respondent failed to return Arbitrator's call within

one hour nor did he call within the entire day, nor has respondent contacted ADR Services at any time after September 23, 2019.

15.    On September 23, 2019, Arbitrator presided over the Binding Arbitration Hearing at ADR Services, Inc., 915 Wilshire Blvd., Suite 1900, Los Angeles. California 90017. Mr. Lishner appeared for claimant, and there was no appearance by respondent, who failed to appear at all, and failed to file any documents such as a Proposed Witness List or a Proposed Exhibit List.

16.    Arbitrator waited one hour before starting the Arbitration Hearing, and respondent did not at any time from 10:00 a.m. to 5:00 p.m. appear for the Arbitration Hearing.

### Arbitrator's Findings

At the Arbitration Hearing, claimant Gwendolyn Nolan was called to testify, and was sworn to testify under penalty of perjury. Arbitrator finds Ms. Gwendolyn Nolan to be credible as a witness and the substance of her testimony to be credible. Arbitrator finds by the higher civil standard of clear and convincing evidence:

1.    Claimant Gwendolyn Nolan and respondent William K. Spencer on June 17, 2014, entered into a contract as follows:

"Outline of Architectural Services
                Project: 32 Senior Affordable Apartments
                Location:      7601 South Western Avenue, Los Angeles CA.
    "The Architect Proposes to provide schematic design drawings in order to research and investigate the project for its compliance with the City of Los Angeles, Planning and Building Department Code and regulation. The architect will verify setback and code restrictions, density, height limits, and other issues that will support the project at this location.
    "A written report shall be provided along with the drawings that outlines and documents that this project can be successfully developed at this location.
    "Allow 15 working days for the work to be completed.
    "The total fee for this work shall be in the amount of $5,000, $2,500 to start and $2,500 when complete.
    "This fee shall be deducted from the total architect's fee when the owner decides to go forward with the final design and construction."

This outline was signed and proposed by respondent William K. Spencer, Project Architect and accepted by claimant Gwendolyn Nolan as owner. Exhibit 3.

2.    Respondent was hired by claimant to create a design for improvement upon the real property located at 7601 S. Western Avenue, Los Angeles, California.

3.    On July 14, 2014, claimant and respondent entered into a "Standard Form of Agreement Between Architect and Owner" which specified that Owner, Gwen Nolan ("Plaintiff" in this Action) and the Architect, William K. Spencer ("Defendant" in this matter) regarding a project consisting of 32 Unit Affordable Senior Citizens Apartments.

4.    The Agreement Specified as the Architect's Scope of Work that Architect would prepare all applications for approval by the agencies.

5.    Respondent represented that for $147,000, he would complete plans for 31 units of senior apartments (phase I) complete with engineering.

6.    Claimant paid respondent $147,000. Exhibit 5.

7.    Respondent failed to complete or provide any acceptable plans for the project or any project.

8.    Respondent failed to clear any of the permits required. Respondent failed to deliver appropriate plans. The plans respondent provided were rejected by the Department of Building and Safety. Respondent failed to and refused to correct any of the deficiencies cited by the Department of Building and Safety. Claimant was unable to gain approval for the project.

The plans submitted by respondent to the Department of Building and Safety were not approved as follows:

1.    The plans did not provide for a mandatory set-back required by the Department of Building and Safety;

2.    The plans included more than the maximum permitted three stories;

3.    The plans improperly provided for apartment balconies which would overhang the sidewalk;

4.    The plans set forth an incorrect address, to wit, 738 Los Angeles Street, which is miles from the real site address;

5.    The plans were for 31 units, but only 27 were legally permitted;

6.    Claimant asked respondent to modify the plans to correct the deficiencies, but respondent refused, unless claimant paid him an additional $147,000;

7.    Claimant lost her confidence in respondent due to the fact that she paid him for usable plans. She was not willing pay him anything additional, for him to correct his own errors.

9.    Respondent Spencer refused to return any of the $147,000 paid to him by claimant, despite repeated demands.

10.    Respondent sought an additional $147,000 from claimant despite his breach of the contract with claimant. Respondent defrauded claimant, having taken $147,000 without complying with his contractual obligation as the architect on the project.

11.    Claimant's uncontroverted credible testimony is that she has suffered damages of $147,000, is entitled to costs of arbitration of $5,250, and court costs.

The Arbitrator finds in favor of claimant Gwendolyn Nolan and against respondent William K. Spencer for breach of contract. Further, respondent Spencer committed fraud in his conduct with claimant in his failure to correct his designs, refusing to work on the project without additional funds from claimant. He refused to correct his own errors unless claimant gave him an additional $147,000. Despite his outrageous behavior, no punitive damages were demanded and no punitive damages were considered nor awarded.

Claimant has paid to Nussbaum, APC, for attorney's fees, the sum of $13,694.79, with an additional $4,819.84 unpaid balance remaining, a total of $18,514.13. In addition, there are additional unbilled fees for the preparation for

the arbitration hearing, Arbitration Brief, and appearance at the hearing, in the estimated sum of $950.00. The total expected attorney's fees is the sum of $19,464.13. It is expected that claimant will incur additional fees for filing a Request for Confirmation of Award of Arbitrator and the appearance therefor, in the sum of $700.00, for a grand total of $20,164.13.

In his answer, respondent sought attorney's fees against claimant.

Claimant was damaged in the amount of $152,250, and attorney's fees, and court costs as proximate cause of respondent's breach of the written contract.

## AWARD

Based upon the foregoing, the award is issued in favor of claimant Gwendolyn Nolan and against respondent William K. Spencer, in the amount of one hundred fifty two thousand two hundred fifty dollars ($152,250), and attorney's fees as may be determined and awarded by the Court, and court costs.

ADR Services, Inc., to give notice.

It is respectfully submitted.


DATED:  October 19, 2019        _____
                                Hon. Suzanne G. Bruguera (Ret.)
                                Arbitrator

**EXHIBIT 1**

March 21, 2019

LAURENCE H. LISHNER, ESQ.
3000 South Robertson Boulevard, Suite 215
Los Angeles, California 90034

Lane M. Nussbaum, Esq.
NUSSBAUM
27489 Agoura Road, Suite 102
Agoura Hills, California 91301

William K. Spencer, In Pro Per
71946 Eleanora Lane
Rancho Mirage, California 92270

**RE:**  *NOLAN v. SPENCER*
*ADRS Case No. 19-1552-SGB*

Dear Counsel:

This letter is to acknowledge my engagement to serve as the neutral arbitrator in the above-referenced matter.

The following are the names of the participants for which a conflict check was performed:

| *Counsel:* | *Firm:* | *Counsel for:* |
|---|---|---|
| *Laurence H. Lishner, Esq.* | *Law Offices of Laurence H. Lishner* | *Claimant: Gwen Nolan* |
| *Lane M. Nussbaum, Esq.* | *Nussbaum* | *Claimant: Gwen Nolan* |
| *In Pro Per* | | *Respondent: William K. Spencer* |

Pursuant to C.C.P. Section 1281.9, CRC Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Standard 7 et seq., and applicable statutory and case law, I, Hon. Suzanne Bruguera, hereby make the following disclosures for the past 5 years with respect to prior arbitrations and private trials and for the past 2 years with respect to prior mediations and references:

*Counsel:*

| | |
|---|---|
| *Laurence H. Lishner, Esq.* | *No Disclosures* |
| *Lane M. Nussbaum, Esq.* | *No Disclosures* |

*Firm:*

| | |
|---|---|
| *Law Offices of Laurence H. Lishner* | *No Disclosures* |
| *Nussbaum* | *No Disclosures* |

*Parties:*

| | |
|---|---|
| *Gwen Nolan* | *No Disclosures* |
| *William K. Spencer* | *No Disclosures* |

My resume and/or website is available online. The information available online may or may not be pertinent to the present case. Counsel are expected to bring to our attention any issue that may arise from the information therein.

Page **2** of **2**
RE:    ***NOLAN v. SPENCER***
        ***ADRS Case No. 19-1552-SGB***

Counsel and parties are asked to please inform ADR Services, Inc. immediately if you are aware of facts that should be disclosed that do not appear in the aforementioned disclosure statement. If you have an objection to my appointment as arbitrator, it must be factual in nature and/or based upon my disclosures. **Objections must be submitted in writing to ADR Services, Inc. within 15 days from transmission of this letter.**

Absent our receipt of a proper notice of disqualification within the time specified above, my appointment will be confirmed.

Please note that ADR Services, Inc. and I will continue to consider accepting offers of other cases, as other cases from time to time arise while the above-referenced case is still pending. Such other cases might involve a party, lawyer or law firm involved in the above-referenced matter. As required under Standard 12(d), counsel in this matter will be notified if a new offer of employment is received while this arbitration is pending.

Thank you for your courtesy and cooperation.

Sincerely yours,

Hon. Suzanne Bruguera (Ret.)

SGB:ec



## ARBITRATOR DISCLOSURE CHECKLIST

## ARBITRATION CASE NAME: _NOLAN v. SPENCER_

## ARBITRATOR: HON. SUZANNE BRUGUERA

**In addition to the information contained in the disclosure statement, I provide "yes" or "no" responses to each of the questions below.**

|  | | YES | NO |
|---|---|---|---|
| 1. | **(Party)** Are you or any member of your immediate or extended family a party, party's spouse, domestic partner, officer, director or trustee of a party? | ☐ | ☒ |
| 2. | **(Family relationship)** Do you or your present or former spouse, domestic partner, child, sibling or the parent of your or your spouse or domestic partner either have a family relationship with a lawyer in the arbitration or is currently associated in the private practice of law with a lawyer in the matter? | ☐ | ☒ |
| 3. | **(Significant relationship)** Do or did you or any member of your immediate family have or had a significant personal relationship with any party or lawyer for a party? | ☐ | ☒ |
| 4. | **(Service as an arbitrator)** Are you now or have you in the last five years served as either a neutral or party-appointed arbitrator in another case involving either a party or lawyer for a party to the current arbitration? | _# 4 – See Disclosure Statement_ | |
| 5. | **(Compensated service as a dispute resolution neutral)** Are you now or have you served as a dispute resolution neutral other than an arbitrator within two years before your proposed nomination or appointment in this matter involving either a party or lawyer for a party for which you expect to receive any form of compensation? | _# 5 – See Disclosure Statement_ | |
| 6. | **(Current arrangements with a party)** Do you have an arrangement concerning prospective employment or other compensated service as a dispute resolution neutral with a party or within the last two years have you discussed such employment or service with a party? | _# 6 – See Disclosure Statement_ | |
| 7. | **(Attorney-client relationships)** Do you have or have you had an attorney-client relationship with a party or lawyer for a party including, within the last two years, represented an officer, director or trustee of a party; gave advice in this or another proceeding to a party or lawyer for a party concerning the same issues in the arbitration or served as a lawyer of a public agency which is a party and personally advised or represented that agency concerning the factual or legal issue in the arbitration? | ☐ | ☒ |

|   |   | YES | NO |
|---|---|---|---|

8.  **(Other professional relationships)** Do you, your spouse or domestic partner, or any immediate members of your family have any other professional relationships with a party or lawyer for a party not disclosed in numbers 2 – 7, including a prior association in the private practice of law within the last two years, employment as an expert witness or consultant for a party or, within the last two years, employment as an expert or consultant for a lawyer in the arbitration?   ☐   ☒

9.  **(Financial interest in a party)** Do you or any member of your immediate family have a financial interest in a party?   ☐   ☒

10. **(Financial Interest in the arbitration)** Do you or any member of your immediate family have either a financial interest in the subject matter of the arbitration or an interest that could be substantially affected by the outcome of the arbitration?   ☐   ☒

11. **(Knowledge of disputed facts)** Do you or any member of your immediate or extended family have personal knowledge of disputed evidentiary facts relevant to the arbitration or is any person in this group likely to be a witness in the matter?   ☐   ☒

12. **(Membership in organizations practicing discrimination)** Are you a member in any organization that discriminates on the basis of race, sex, religion, national origin or sexual orientation?   ☐   ☒

13. **(Offers for future employment or professional relationships)** Do you intend, during the pendency of the instant matter, to entertain offers of employment as a neutral or offers of new professional relationships from a party or lawyer for a party?   ☒   ☐

14. Are you aware of any other matter that might cause a person aware of the facts to reasonably entertain a doubt that you would be able to be impartial?   ☐   ☒

15. Are you aware of any other matter that leads you to believe there is a substantial doubt as to your capacity to be impartial, including, but not limited to, bias or prejudice toward a party, lawyer or law firm in the arbitration?   ☐   ☒

16. Are you aware of any other matter that otherwise leads you to believe that your disqualification will further the interests of justice?   ☐   ☒

17. Do you have any permanent or temporary physical impairment that will cause you to be unable to properly perceive the evidence or properly conduct the proceedings?   ☐   ☒

_____          _March 24, 2019_
Hon. Suzanne Bruguera (Ret.)              Dated

**EXHIBIT 2**

Honorable Suzanne Bruguera (Ret.)
ADR SERVICES, INC.
915 Wilshire Boulevard, Suite 1900
Los Angeles, California 90017
(213) 683-1600 PH
(213) 683-9797 FAX
Arbitrator
judgebruguera@adrservices.com

IN THE MATTER OF THE BINDING ARBITRATION BETWEEN:

| | | |
|---|---|---|
| GWEN NOLAN, | ) | ADRS Case No. 19-1552-SGB-02 |
| | ) | |
| | ) | |
| Claimant, | ) | **FIRST ARBITRATION MANAGEMENT** |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| | ) | |
| WILLIAM K. SPENCER, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

1.    A Telephonic Status Conference was held on May 16, 2019 at 9:00 a.m.

2.    Laurence Lishner, Esq. appeared for claimant.

3.    William K. Spencer, respondent, appeared for himself in propria persona.

4.    Retired Judge of the Superior Court of the State of California for the County of
Los Angeles, the Hon. Suzanne G. Bruguera, ret., of ADR Services, Inc., presided as the duly
selected Arbitrator.

5.    The parties informed the Arbitrator that they may conduct discovery.

6.      The Arbitrator requests that claimant provide a copy of the complaint, and that respondent provide a copy of the responsive pleading, to the Arbitrator by email. The parties should also provide the Arbitrator with a copy of the arbitration agreement, if available.

7.      A telephonic Final Status Conference is set for July 18, 2019 at 9:00 a.m. On or before July 8, 2019, the parties should by email provide each other and the Arbitrator with a list of exhibits called Exhibit List, a copy of each exhibit they intend to introduce to the Arbitrator at the hearing, and a list of witnesses they intend to call to testify under oath at the hearing. These items will be discussed at the Final Status Conference. Any motions in limine should be filed by July 12, 2019, and any opposition should be filed by July 16, 2019, to be heard at the Final Status Conference.

8.      A one day Binding Arbitration Hearing is set for July 22, 2019 from 10:00 a.m. to 6:00 p.m. at ADR Services, 915 Wilshire Blvd., Suite 1900, Los Angeles, California 90017. Exhibit notebooks should be exchanged by the parties, and each party should provide the Arbitrator with an exhibit notebook. Claimant shall be the first party to proceed, followed by the respondent. The parties may call witnesses to be sworn and testify, and may present exhibits. The parties have the opportunity to make opening statements and closing arguments.

9.      Communication with the Arbitrator shall be by email copied to all parties. Email should be addressed to elvira@adrservices.com and to judgebruguera@adrservices.com.

Dated:    June 28, 2019

Hon. Suzanne Bruguera (Ret.)
Arbitrator
ADR Services, Inc.

2

**EXHIBIT 3**

**William K. Spencer, Architect**
71946 Eleanora Lane, Rancho Mirage, CA 92270
Phone (760) 779-9854, Cell (818) 903-3099

June 12, 2014

# Outline of Architectural Services

Project:        32 Senior Affordable Apartments

Location:       7601 South Western Ave., Los Angeles, CA

The architect proposes to provide schematic design drawings in order to research and investigate the project for its compliance with the City of Los Angeles, Planning and Building Department Codes and regulations. The architect will verify, setbacks, code restrictions, density, height limits and other issues that will support the project at this location.
A written report shall be provided along with the drawings that outlines and documents that this project can be successfully developed at this location.
Allow 15 working days for the work to be completed.

The total fee for this work shall be in the amount of $5,000.00. $2,500.00 to start and $2,500.00 when complete.

This fee shall be deducted from the total architect's fee when the owner decides to go forward with the final design and construction.

Proposed by:

_____                    _____
William K. Spencer, Project Architect                    Date

Accepted by

_____                    _____
Gwen Nolan, Owner                                     Date

**EXHIBIT 4**

*π 3*

*AIA Document B141/CMa*

# Standard Form of Agreement Between Owner and Architect

*Where the Construction Manager is NOT a Constructor*

### 1992 CONSTRUCTION MANAGER-ADVISER EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

*This document is intended to be used in conjunction with the 1992 editions of AIA Documents B801/CMa, A101/CMa and A201/CMa.*

## AGREEMENT

made as of the **FOURTEENTH** day of **JULY** in the year of
*(In words, indicate day, month and year.)*
**2014**

**BETWEEN** the Owner:
*(Name and address)*
GWEN NOLAN
7601 SO. WESTERN AVE
LOS ANGELES, CALIF.

and the Architect:
*(Name and address)*
WILLIAM K. SPENCER
71946 ELEANORA LANE
RANCHO MIRAGE CA. 92270

for the following Project:
*(Include detailed description of Project, location, address and scope.)*
32 UNIT AFFORDABLE
SENIOR CITIZENS APARTMENTS

The Construction Manager is:
*(Name and address)*
N/A

The Owner and Architect agree as set forth below.

Copyright 1975, 1980, ©1992 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without the written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.


**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • **WARNING: Unlicensed** photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**B141/CMa-1992  1**

## TERMS AND CONDITIONS OF AGREEMENT BETWEEN OWNER AND ARCHITECT

### ARTICLE 1
### ARCHITECT'S RESPONSIBILITIES

**1.1    ARCHITECT'S SERVICES**

**1.1.1**  The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2**  The Architect's services shall be provided in conjunction with the services of a Construction Manager as described in the edition of AIA Document B801/CMa, Standard Form of Agreement Between Owner and Construction Manager, current as of the date of this Agreement.

**1.1.3**  The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work. The Architect shall submit for the Owner's approval and the Construction Manager's information a schedule for the performance of the Architect's services which may be adjusted as the Project proceeds, and shall include allowances for periods of time required for the Owner's and Construction Manager's review and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner.

**1.1.4**  The services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

### ARTICLE 2
### SCOPE OF ARCHITECT'S BASIC SERVICES

**2.1    DEFINITION**

**2.1.1**  The Architect's Basic Services consist of those described in Paragraphs 2.2 through 2.6 and any other services identified in Article 12 as part of Basic Services, and include normal structural, mechanical and electrical engineering services.

**2.2    SCHEMATIC DESIGN PHASE**

**2.2.1**  The Architect shall review the program, schedule and construction budget furnished by the Owner to ascertain the requirements of the Project and shall arrive at a mutual understanding of such requirements with the Owner.

**2.2.2**  The Architect shall review with the Owner and Construction Manager proposed site use and improvements; selection of materials, building systems and equipment; and methods of Project delivery.

**2.2.3**  The Architect shall review with the Owner and Construction Manager alternative approaches to design and construction of the Project.

**2.2.4**  Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Schematic Design Docu-

ments consisting of drawings and other documents illustrating the scale and relationship of Project components.

**2.2.5**  At intervals appropriate to the progress of the Schematic Design Phase and mutually agreeable to the Owner, Construction Manager and the Architect, the Architect shall provide schematic design studies for the Owner's review and the Construction Manager's information.

**2.2.6**  In the further development of the drawings and specifications during this and subsequent phases of design, the Architect shall be entitled to assume the accuracy of the estimates of Construction Cost which are to be provided by the Construction Manager under the Construction Manager's agreement with the Owner.

**2.2.7**  Upon completion of the Schematic Design Phase, the Architect shall provide drawings, outline specifications and other documents for the Owner's approval and the Construction Manager's information.

**2.3    DESIGN DEVELOPMENT PHASE**

**2.3.1**  Based on the approved Schematic Design Documents and any adjustments authorized by the Owner in the program, schedule or construction budget, the Architect shall prepare Design Development Documents for the Construction Manager's review and the Owner's approval. The Design Development Documents shall be based upon data and estimates prepared by the Construction Manager and shall consist of drawings and other documents that establish and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate.

**2.3.2**  At intervals mutually agreeable to the Owner, Construction Manager and Architect, the Architect shall provide drawings and other documents which depict the current status of design development for the Owner's review and the Construction Manager's information.

**2.3.3**  Upon completion of the Design Development Phase, the Architect shall provide drawings, outline specifications and other documents for the Owner's approval and the Construction Manager's information.

**2.4    CONSTRUCTION DOCUMENTS PHASE**

**2.4.1**  Based on the approved Design Development Documents and any further adjustments authorized by the Owner in the scope or quality of the Project or in the construction budget, the Architect, utilizing data and estimates prepared by the Construction Manager, shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project.

**2.4.2**  At intervals mutually agreeable to the Owner, Construction Manager and Architect, the Architect shall provide Drawings and Specifications for the Owner's and the Construction Manager's review.

**2.4.3**  Upon completion of the Construction Documents Phase, the Architect shall provide Construction Documents for the Owner's approval and the Construction Manager's information.

**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • **WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

**B141/CMa–1992**

**2.4.4** The Architect shall assist the Owner and Construction Manager in the preparation of the necessary bidding information, bidding forms, the Conditions of the Contracts, and the forms of Agreement between the Owner and the Contractors. The Architect shall assist the Construction Manager in issuing bidding documents to bidders and conducting prebid conferences with prospective bidders. The Architect, with the assistance of the Construction Manager, shall respond to questions from bidders, and shall issue addenda.

**2.4.5** The Architect shall assist the Owner and Construction Manager in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

### 2.5    BIDDING OR NEGOTIATION PHASE

**2.5.1** The Architect, following the Owner's approval of the Construction Documents and of the Construction Manager's latest estimate of Construction Cost, shall assist the Construction Manager in obtaining bids or negotiated proposals and assist in preparing contracts for construction.

### 2.6    CONSTRUCTION PHASE—ADMINISTRATION OF THE CONSTRUCTION CONTRACT

**2.6.1** The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for construction and terminates at the earlier of the issuance to the Owner of the final Project Certificate for Payment or 60 days after the date of Substantial Completion of the Work.

**2.6.2** The Architect shall provide administration of the Contract for construction in cooperation with the Construction Manager as set forth below and in the edition of AIA Document A201/CMa, General Conditions of the Contract for Construction, Construction Manager-Adviser Edition, current as of the date of this Agreement.

**2.6.3** Duties, responsibilities and limitations of authority of the Architect shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractors and the Construction Manager, which consent shall not be unreasonably withheld.

**2.6.4** The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractors is due, and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contracts for Construction. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement unless otherwise modified by written instrument.

**2.6.5** The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect in writing to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the

Work. (More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)

**2.6.6** The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are the Contractors' responsibility under the Contracts for Construction. The Architect shall not be responsible for the Contractors' schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not be responsible for the performance by the Construction Manager of the services required by the Construction Manager's agreement with the Owner. The Architect shall not have control over or charge of acts or omissions of the Contractors, Subcontractors, or their agents or employees, or of any other persons performing services or portions of the Work.

**2.6.7** The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.6.8** Communications by and with the Architect's consultants shall be through the Architect.

**2.6.9** Based on the Architect's observations and evaluations of each Contractor's Application for Payment, the Architect shall review and certify the amounts due the respective Contractors.

**2.6.9.1** The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site as provided in Subparagraph 2.6.5 on the recommendations of the Construction Manager and on the data comprising the Contractors' Applications for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment shall further constitute a representation that the Contractor is entitled to payment in the amount certified.

**2.6.9.2** The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.6.10** The Architect shall have authority, after notification to the Construction Manager, to reject Work which does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable for implementation of the intent of the Contract Documents, the Architect will have authority, upon written authorization from the Owner, to require additional inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility

**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

of the Architect to the Construction Manager, Contractors, Subcontractors, material and equipment suppliers, their agents or employees or other persons performing portions of the Work.

**2.6.11** The Architect shall review and approve or take other appropriate action upon Contractors' submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Contractors' Work or in construction by the Owner's own forces, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities or for substantiating instructions for installation or performance of equipment or systems designed by the Contractors, all of which remain the responsibility of the Contractors to the extent required by the Contract Documents. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

**2.6.12** The Architect shall review and sign or take other appropriate action on Change Orders and Construction Change Directives prepared by the Construction Manager for the Owner's approval and execution in accordance with the Contract Documents.

**2.6.13** The Architect may authorize minor changes in Work not involving an adjustment in a Contract Sum or an extension of a Contract Time which are not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order issued through the Construction Manager.

**2.6.14** The Architect, assisted by the Construction Manager, shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion. The Architect shall forward to the Owner warranties and similar submittals required by the Contract Documents which have been received from the Construction Manager. The Architect shall issue a final Project Certificate for Payment upon compliance with the requirements of the Contract Documents.

**2.6.15** The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon.

**2.6.16** Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractors, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith.

**2.6.17** The Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Contract Documents.

**2.6.18** The Architect shall render written decisions within a reasonable time on all claims, disputes or other matters in question between the Owner and Contractors relating to the execution or progress of the Work as provided in the Contract Documents.

**2.6.19** The Architect's decisions on claims, disputes or other matters, including those in question between the Owner and Contractors, except for those relating to aesthetic effect as provided in Subparagraph 2.6.17, shall be subject to arbitration as provided in this Agreement and in the Contract Documents.

## ARTICLE 3

## ADDITIONAL SERVICES

### 3.1   GENERAL

**3.1.1** The services described in this Article 3 are not included in Basic Services unless so identified in Article 12, and they shall be paid for by the Owner as provided in this Agreement, in addition to the compensation for Basic Services. The services described under Paragraphs 3.2 and 3.4 shall only be provided if authorized or confirmed in writing by the Owner. If services described under Contingent Additional Services in Paragraph 3.3 are required due to circumstances beyond the Architect's control, the Architect shall notify the Owner prior to commencing such services. If the Owner deems that such services described under Paragraph 3.3 are not required, the Owner shall give prompt written notice to the Architect. If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Architect shall have no obligation to provide those services.

### 3.2   PROJECT REPRESENTATION
BEYOND BASIC SERVICES

**3.2.1** If more extensive representation at the site than is described in Subparagraph 2.6.5 is required, the Architect shall provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities.

**3.2.2** Project Representatives shall be selected, employed and directed by the Architect, and the Architect shall be compensated therefor as agreed by the Owner and Architect. The duties, responsibilities and limitations of authority of Project Representatives shall be as described in the edition of AIA Document B352 current as of the date of this Agreement, unless otherwise agreed.

**3.2.3** Through the observations by such Project Representatives, the Architect shall endeavor to provide further protection for the Owner against defects and deficiencies in the Work, but the furnishing of such project representation shall not modify the rights, responsibilities or obligations of the Architect as described elsewhere in this Agreement.

### 3.3   CONTINGENT ADDITIONAL SERVICES

**3.3.1** Making revisions in Drawings, Specifications or other documents when such revisions are:

.1 inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by adjustments in the Owner's program or Project budget;

.2 requested by the Owner because the Construction Manager's estimate of Construction Cost exceeds the Owner's budget, except where such excess is due to changes initiated by the Architect in scope, capacities of basic systems, or the kinds and quality of materials, finishes or equipment;

.3 required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents; or

.4 due to changes required as a result of the Owner's failure to render decisions in a timely manner.

**3.3.2** Providing services required because of significant changes in the Project including, but not limited to, changes in size, quality, complexity, the Owner's or Construction Manager's schedule, or the method of bidding or negotiating and contracting for construction, except for services required under Subparagraph 5.2.3.

**3.3.3** Preparing Drawings, Specifications and other documentation and supporting data, evaluating Contractor's proposals, and providing other services in connection with Change Orders and Construction Change Directives.

**3.3.4** Providing services in connection with evaluating substitutions proposed by Contractors and making subsequent revisions to Drawings, Specifications and other documentation resulting therefrom.

**3.3.5** Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and furnishing services required in connection with the replacement of such Work.

**3.3.6** Providing services made necessary by the termination or default of the Construction Manager or a Contractor, by major defects or deficiencies in the Work of a Contractor, or by failure of performance of either the Owner or a Contractor under a Contract for Construction.

**3.3.7** Providing services in evaluating an extensive number of claims submitted by a Contractor or others in connection with the Work.

**3.3.8** Providing services in connection with a public hearing, arbitration proceeding or legal proceeding except where the Architect is party thereto.

**3.3.9** Preparing documents for alternate, separate or sequential bids or providing services in connection with bidding, negotiation or construction prior to the completion of the Construction Documents Phase.

**3.4  OPTIONAL ADDITIONAL SERVICES**

**3.4.1** Providing analyses of the Owner's needs and programming the requirements of the Project.

**3.4.2** Providing financial feasibility or other special studies.

**3.4.3** Providing planning surveys, site evaluations or comparative studies of prospective sites.

**3.4.4** Providing special surveys, environmental studies and submissions required for approvals of governmental authorities or others having jurisdiction over the Project.

**3.4.5** Providing services relative to future facilities, systems and equipment.

**3.4.6** Providing services to investigate existing conditions or facilities or to make measured drawings thereof.

**3.4.7** Providing services to verify the accuracy of drawings or other information furnished by the Owner.

**3.4.8** Providing coordination of construction performed by the Owner's own forces and coordination of services required in connection with construction performed and equipment supplied by the Owner.

**3.4.9** Providing services in connection with the work of separate consultants retained by the Owner.

**3.4.10** Providing estimates of Construction Cost.

**3.4.11** Providing detailed quantity surveys or inventories of material and equipment.

**3.4.12** Providing analyses of owning and operating costs.

**3.4.13** Providing interior design and other similar services required for or in connection with the selection, procurement or installation of furniture, furnishings and related equipment.

**3.4.14** Providing services for planning tenant or rental spaces.

**3.4.15** Making investigations, inventories of materials or equipment, or valuations and detailed appraisals of existing facilities.

**3.4.16** Preparing a set of reproducible record drawings showing significant changes in the Work made during construction based on marked-up prints, drawings and other data furnished by Contractors.

**3.4.17** Providing assistance in the utilization of equipment or systems such as testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation.

**3.4.18** Providing services after issuance to the Owner of the final Project Certificate for Payment, or in the absence of a final Project Certificate for Payment, more than 60 days after the date of Substantial Completion of the Work.

**3.4.19** Providing services of consultants for other than architectural, structural, mechanical and electrical engineering portions of the Project provided as a part of Basic Services.

**3.4.20** Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted architectural practice.

### ARTICLE 4
### OWNER'S RESPONSIBILITIES

**4.1** The Owner shall provide full information regarding requirements for the Project, including a program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems, and site requirements.

**4.2** The Owner shall establish and update an overall budget for the Project based on consultation with the Construction Manager and the Architect, which shall include the Construction Cost, the Owner's other costs and reasonable contingencies related to all of these costs.

**4.3** If requested by the Architect, the Owner shall furnish evidence that financial arrangements have been made to fulfill the Owner's obligations under this Agreement.

**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**4.4** The Owner shall designate a representative authorized to act on the Owner's behalf with respect to the Project. The Owner or such authorized representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

**4.5** The Owner shall retain a construction manager to administer the Project. The Construction Manager's services, duties and responsibilities will be as described in the edition of AIA Document B801/CMa, Standard Form of Agreement Between Owner and Construction Manager, current as of the date of this Agreement. The Terms and Conditions of the Agreement between Owner and Construction Manager shall be furnished to the Architect and shall not be modified without written consent of the Architect, which consent shall not be unreasonably withheld. The Architect shall not be responsible for actions taken by the Construction Manager.

**4.6** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

**4.7** The Owner shall furnish the services of geotechnical engineers when such services are requested by the Architect. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, and ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

**4.7.1** The Owner shall furnish the services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Architect.

**4.8** The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.9** The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Application for Payment or to ascertain how or for what purposes the Contractor has used the money paid by or on behalf of the Owner.

**4.10** The services, information, surveys and reports required by Paragraphs 4.6 through 4.9 shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

**4.11** Prompt written notice shall be given by the Owner to the Architect and Construction Manager if the Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

**4.12** The proposed language of certificates or certifications requested of the Architect or Architect's consultants shall be

submitted to the Architect for review and approval at least 14 days prior to execution. The Owner shall not request certifications that would require knowledge or services beyond the scope of this Agreement.

**4.13** The Owner shall furnish the required information and services and shall render approvals and decisions as expeditiously as necessary for the orderly progress of the Architect's services and Work of the Contractors.

**4.14** The Owner shall furnish the Architect copies of written communications with the Construction Manager and Contractors.

## ARTICLE 5

## CONSTRUCTION COST

### 5.1   DEFINITION

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**5.1.2** The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractors' overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction. Construction Cost shall also include the compensation of the Construction Manager and Construction Manager's consultants.

**5.1.3** Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Paragraphs 4.1 through 4.4 and 4.6 through 4.14.

### 5.2   RESPONSIBILITY FOR CONSTRUCTION COST

**5.2.1** The Architect's review of the Owner's Project budget and of preliminary estimates of Construction Cost or detailed estimates of Construction Cost prepared by the Construction Manager is solely for the Architect's guidance in the Architect's preparation of the Construction Documents. Accordingly, the Architect cannot and does not warrant the accuracy of the estimates of the Construction Manager, or warrant or represent that bids or negotiated prices will not vary from the Owner's Project budget or from any estimate of Construction Cost or evaluation reviewed by the Architect.

**5.2.2** No fixed limit of Construction Cost shall be established as a condition of this Agreement.

**5.2.3** In the event that the Construction Manager's estimate or the lowest bona fide bid or negotiated proposal received by the Owner exceeds the Owner's budget for reasons other than those described in Paragraph 3.3, the modification of Contract Documents shall be the limit of the Architect's responsibility. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

AIA DOCUMENT B141/CMa • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 6

### USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

**6.1** The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project and, unless otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

**6.2** Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

## ARTICLE 7

### ARBITRATION

**7.1** Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

**7.2** Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

**7.3** No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

**7.4** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 8

### TERMINATION, SUSPENSION OR ABANDONMENT

**8.1** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**8.2** If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Architect's services.

**8.3** This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than 90 consecutive days, the Architect may terminate this Agreement by giving written notice.

**8.4** Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

**8.5** If the Owner fails to make payment when due the Architect for services and expenses, the Architect may, upon seven days' written notice to the Owner, suspend performance of services under this Agreement. Unless payment in full is received by the Architect within seven days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

**8.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 8.7.

**8.7** Termination Expenses are in addition to compensation for Basic and Additional Services, and include expenses which are directly attributable to termination. Termination Expenses shall be computed as a percentage of the total compensation for Basic Services and Additional Services earned to the time of termination, as follows:

.1 Twenty percent of the total compensation for Basic and Additional Services earned to date if termination occurs before or during the predesign, site analysis, or Schematic Design Phases; or

.2 Ten percent of the total compensation for Basic and Additional Services earned to date if termination occurs during the Design Development Phase; or

.3 Five percent of the total compensation for Basic and Additional Services earned to date if termination occurs during any subsequent phase.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

**9.1** Unless otherwise provided, this Agreement shall be governed by the law of the place where the Project is located.

**9.2** Terms in this Agreement shall have the same meaning as those in the edition of AIA Document A201/CMa, Gen-

**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • **WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.2.2, based on (1) the lowest bona fide bids or negotiated proposals, or (2) if no such bids or proposals are received, the most recent estimate of Construction Cost prepared by the Construction Manager for such portions of the Project.

### 10.4 PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES AND REIMBURSABLE EXPENSES

**10.4.1** Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred.

### 10.5 PAYMENTS WITHHELD

**10.5.1** No deductions shall be made from the Architect's compensation on account of penalty; liquidated damages or other sums withheld from payments to Contractors, or on account of the cost of changes in the Work other than those for which the Architect has been found to be liable.

### 10.6 ARCHITECT'S ACCOUNTING RECORDS

**10.6.1** Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

### ARTICLE 11
### BASIS OF COMPENSATION

The Owner shall compensate the Architect as follows:

**11.1** AN INITIAL PAYMENT of *FIVE THOUSAND* Dollars ($ *5000°°* )
shall be made upon execution of this Agreement and credited to the Owner's account at final payment. *( RECEIVED 7/14/14)*

### 11.2 BASIC COMPENSATION

**11.2.1** FOR BASIC SERVICES, as described in Article 2, and any other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:

*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*

*5 ½% OF THE COST OF CONSTRUCTION*
*(ESTIMATED CONSTRUCTION COST $2,800,000)*

**11.2.2** Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:

*(Insert additional phases as appropriate.)*

*$(148,000 $$$$) TOTAL FEE BASED ON $2,800,000°°*

*WORK TO BE DONE*
*SOILS, CIVIL AND*
*DESIGN DEVELOPMENT*

| | |
|---|---|
| Schematic Design Phase: | percent ( *15%* ) *½ a start* |
| Design Development Phase: | percent ( *20%* ) *51,800* |
| Construction Documents Phase: | percent ( *40%* ) |
| Bidding or Negotiation Phase: | percent ( *5* %) |
| Construction Phase: | percent ( *20%* ) |
| Total Basic Compensation: | one hundred percent (100%) |

### 11.3 COMPENSATION FOR ADDITIONAL SERVICES

**11.3.1** FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES, as described in Paragraph 3.2, compensation shall be computed as follows:

*175°° / HOUR PRINCIPAL ARCHITECT*
*90°° / HOUR SENIOR DRAFTSMAN*
*35°° / HOUR CLERICAL*

**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • **WARNING: Unlicensed**

**B141/CMa-1992   11**

**11.3.2** FOR ADDITIONAL SERVICES OF THE ARCHITECT, as described in Articles 3 and 12, other than (1) Additional Project Representation, as described in Paragraph 3.2, and (2) services included in Article 12 as part of Basic Services, but excluding services of consultants, compensation shall be computed as follows:

*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*

175⁰⁰/HOUR PRINCIPAL ARCHITECT
90⁰⁰/HOUR SENIOR DRAFTSMAN
35⁰⁰/HOUR CLERICAL

**11.3.3** FOR ADDITIONAL SERVICES OF CONSULTANTS, including additional structural, mechanical and electrical engineering services and those provided under Subparagraph 3.4.19 or identified in Article 12 as part of Additional Services, a multiple of **110%** ( **1.10** ) times the amounts billed to the Architect for such services.
*(Identify specific types of consultants in Article 12, if required.)*

## 11.4   REIMBURSABLE EXPENSES

**11.4.1** FOR REIMBURSABLE EXPENSES, as described in Paragraph 10.2, and any other items included in Article 12 as Reimbursable Expenses, a multiple of **AT COST.** ( **0** ) times the expenses incurred by the Architect, the Architect's employees and consultants in the interest of the Project.

## 11.5   ADDITIONAL PROVISIONS

**11.5.1** IF THE BASIC SERVICES covered by this Agreement have not been completed within ( ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 10.3.3 and 11.3.2.

**11.5.2** Payments are due and payable ( ) days from the date of the Architect's invoice. Amounts unpaid ( ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
*(Insert rate of interest agreed upon.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**11.5.3** The rates and multiples set forth for Additional Services shall be annually adjusted in accordance with normal salary review practices of the Architect.

## ARTICLE 12
### OTHER CONDITIONS OR SERVICES

*(Insert descriptions of other services, identify Additional Services included within Basic Compensation and insert modifications to the payment and compensation terms included in this Agreement.)*

SCOPE OF WORK AS RELATES TO THIS PROJECT.

1. THE ARCHITECT WILL PRE PARE ALL APPLICATIONS FOR APPROVAL TO THE FOLLOWING AGENCYS.
(A) CASE MANAGEMENT DEPARTMENT OF THE BUILDING AND SAFETY FOR APPROVAL OF PROJECT PRELIMINARY PLAN CHECK.
(B) LOS ANGELES CITY HOUSING AUTHORITY COVENANT AND APPROVAL OF AFFORDABLE DENSITY BONUS AND REDUCED PARKING.
(C) COMMUNITY REDEVELOPMENT AGENCY APPROVAL OF AFFORDABLE SENIOR HOUSING ON THIS SITE.
2. THE ARCHITECT WILL PRE PARE A COMPLETE PRELIMINARY PACKAGE OF DESIGN SOLUTION TO A LEVEL FOR CONTRACTORS TO GIVE A CREDITABLE COST ESTIMATE
3. THE ARCHITECT WILL ASSIT THE OWNER TO PRE PARE ALL DOCUMENTS NECESSARY TO AQUIRE A CONSTRUCTION LOAN.

This Agreement entered into as of the day and year first written above.

OWNER
*(Signature)*

GWEN NOLAN
*(Printed name and title)*

ARCHITECT
*(Signature)*

WILLIAM K. SPENCER
*(Printed name and title)*

**AIA** CAUTION: You should sign an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced. See Instruction Sheet for Limited License for Reproduction of this document.

AIA DOCUMENT B141/CMa • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

B141/CMa-1992   1

**EXHIBIT 5**

FAX TO
JAUNITA,
FOR GYNN NOLAN
323-7533040

# WILLIAM K. SPENCER
### Architect
71946 Eleanora Lane, Rancho Mirage, CA 92270
Cell (818) 903-3099

## STATEMENT FOR SERVICES

**DATE:** AUGUST 26, 2017

**PROJECT:** 31 UNIT SENIOR COMPLEX

**CLIENT:** GYNN NOLAN

**SERVICES** COMPLETED PLANS FOR
31 UNIT SENIOR APARTMENTS ( PHASE I )
COMPLET WITH ENGINEERING

TOTAL DESIGN FEE RECEIVED $147,000⁰⁰

COMPLETED PRELIMINARY PLANS
FOR 30 UNIT DESIGN NO
ENGINEERING

TOTAL AMOUNT RECEIVED
$147,000⁰⁰

William K. Spencer
PROJECT ARCHITECT

**Cashier's Check - Customer Copy**    No. 0189509553

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Void After 90 Days    91-170/1221    Date 03/23/15 05:27:17 PM
NAZ

CENTINELA & LA TIJERA
0005    0002174    0284

Pay    BANK OF AMERICA    THREE ZERO ZERO ZERO ZERO CTSCTS    ***$30,000.00

To The Order Of    WILLIAM SPENCER

Not-Negotiable
Customer Copy
Retain for your Records

Remitter (Purchased By):  GWENDOLYN NOLAN

Bank of America, N.A.
PHOENIX, AZ    457002931717

---

**Cashier's Check - Customer Copy**    No. 0189510870

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Void After 90 Days    91-170/1221    Date 06/01/15 12:08:56 PM
NAZ

CENTINELA & LA TIJERA
0014    0002174    0282

Pay    BANK OF AMERICA    THREE ZERO ZERO ZERO ZERO CTSCTS    ***$30,000.00

To The Order Of    WILLIAM SPENCER
BALANCE $5,000

Not-Negotiable
Customer Copy
Retain for your Records

Remitter (Purchased By):  GWENDOLYN NOLAN

Bank of America, N.A.
PHOENIX, AZ    457002931717

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

**Cashier's Check - Customer Copy**

No. 0189509554

Void After 90 Days    91-170/1221    Date 03/23/15 05:27:17 PM
NAZ

CENTINELA & LA TIJERA
0005    0002174    0284

00-53-3364B  11-2010

Pay    

**\*\*\*$4,000.00**

To The
Order Of    WILLIAM SPENCER

Not-Negotiable
Customer Copy
Retain for your Records

Remitter (Purchased By):  GWENDOLYN NOLAN

457002931717

Bank of America, N.A.
PHOENIX, AZ

---

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

**Cashier's Check - Customer Copy**

No. 0189510315

Void After 90 Days    91-170/1221    Date 05/01/15 12:41:30 PM
NAZ

CENTINELA & LA TIJERA
0008    0002174    0050

00-53-3364B  11-2010

Pay

**\*\*\*$31,000.00**

To The
Order Of    WILLIAM SPENCER

Not-Negotiable
Customer Copy
Retain for your Records

Remitter (Purchased By):  MS GWENDOLYN L NOLAN

457002931717

Bank of America, N.A.
PHOENIX, AZ

30.07.2017 12:33 PM





# EXHIBIT 6

# Los Angeles Department of Building and Safety

## Certificate Information: 7601 S WESTERN AVE 90047

| | | |
|---|---|---|
| Application / Permit | 15010-10000-02176 | *Dean Lee* |
| Plan Check / Job No. | B15LA08362 | *(213) 978-4470* |
| Group | Building | *Dean.Lee@lacity.org* |
| Type | Bldg-New | |
| Sub-Type | Apartment | |
| Primary Use | (5) Apartment | |
| Work Description | 31 UNIT "SENIOR/ AFFORDABLE" LIVING UNITS OVER AT GRADE PARKING GARAGE | |
| Permit Issued | No | |
| Current Status | Reviewed by Supervisor on 8/6/2015 | |

### Permit Application Status History

| | | |
|---|---|---|
| Submitted | 6/18/2015 | APPLICANT |
| Assigned to Plan Check Engineer | 7/16/2015 | DEAN LEE |
| Corrections Issued | 7/31/2015 | DEAN LEE |
| Green Plans Picked Up | 7/31/2015 | APPLICANT |
| Reviewed by Supervisor | 8/6/2015 | KESETE HAREGOT |
| Building Plans Picked Up | 8/12/2015 | APPLICANT |

### Permit Application Clearance Information

| | | | |
|---|---|---|---|
| DAS Clearance | Not Cleared | 7/14/2015 | WAI LAU |
| Green Code | Not Cleared | 7/16/2015 | ROLLIN GETTLE III |
| Address approval | Not Cleared | 7/29/2015 | DEAN LEE |
| Building over 3-story or 35-ft | Not Cleared | 7/29/2015 | DEAN LEE |
| Encroachment in public way | Not Cleared | 7/29/2015 | DEAN LEE |
| Eng Process Fee Ord 176,300 | Not Cleared | 7/29/2015 | DEAN LEE |
| Fire Marshall Fire Life Safety | Not Cleared | 7/29/2015 | DEAN LEE |
| Highway dedication | Not Cleared | 7/29/2015 | DEAN LEE |
| Housing density bonus | Not Cleared | 7/29/2015 | DEAN LEE |
| Hydrant and Access approval | Not Cleared | 7/29/2015 | DEAN LEE |
| Low Impact Development | Not Cleared | 7/29/2015 | DEAN LEE |
| Opn space landscape/Water mgmt | Not Cleared | 7/29/2015 | DEAN LEE |
| Permit | Not Cleared | 7/29/2015 | DEAN LEE |
| Project located in CRA area | Not Cleared | 7/29/2015 | DEAN LEE |
| Roof/Waste drainage to street | Not Cleared | 7/29/2015 | DEAN LEE |
| Sewer availability | Not Cleared | 7/29/2015 | DEAN LEE |
| Work Adjacent to Public Way | Not Cleared | 7/29/2015 | DEAN LEE |

### Contact Information

No Data Available.

### Inspector Information

No Data Available.



**COOKE & ASSOCIATES, LLC**
Structural & Civil Engineers
18726 S. Western Ave #208
Gardena, CA 90248
(310)608-5408

September 13, 2019

**Re: 7601 South Western Ave.
Los Angeles, CA. 90047**

To Whom It May Concern:

After reviewing the proposed plans, there were certain deficiencies. The city requires a highway
dedication of 3 feet and a 5 foot landscape set back; totaling an 8 foot set back on Western Ave.
The balconies are also projecting over the property line.

The plans drawn by Bill Spencer will not fit on the proposed lot.

If you have any questions please feel free to contact me at (310)608-5408.

Thank you,

Conway Cooke

# PROOF OF SERVICE

**State of California**
**County of Los Angeles**

I certify that I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 915 Wilshire Boulevard, Suite 250, Los Angeles, California 90017.

On October 22, 2019, I served the foregoing document described as the **ARBITRATION AWARD** on the interested parties in this action as follows:

LAURENCE H. LISHNER, ESQ.
3000 South Robertson Boulevard, Suite 215
Los Angeles, California 90034
Llsinfo215@gmail.com

Lane M. Nussbaum, Esq.
NUSSBAUM
27489 Agoura Road, Suite 102
Agoura Hills, California 91301
lnussbaum@nussbaumapc.com

William K. Spencer, IN PRO PER
2330 East Del Mar Boulevard, Suite 111
Pasadena, California 91107
wksarch@gmail.com

___X___    **BY CERTIFIED U.S. MAIL,** I placed a true copy of the document described above in a sealed envelope and caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California.
            **BY FACSIMILE,** I caused such to be faxed to the attorneys on October 22, 2019

___X___    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address *elvira@adrservices.com* to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.
            **BY PERSONAL SERVICE,** I caused such envelope to be delivered by hand to the attorneys on October 22, 2019.

___X___    **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____    **FEDERAL** I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on October 22, 2019 at Los Angeles, California

Elvira Peña Camacho



7019 1120 0000 7158 6042

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
**Total Postage and Fees**
$

Postmark Here

*Sent To* Lane M. Nussbaum, Esq.
*Street and Apt. No., or PO Box No.* 27489 Agoura Rd, #102
*City, State, ZIP+4®* Agoura Hills, CA 91301

**PS Form 3800, April 2015** PSN 7530-02-000-9047 **See Reverse for Instructions**

7019 1120 0000 7158 6035

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
**Total Postage and Fees**
$

Postmark Here

*Sent To* Laurence Lishner, Esq.
*Street and Apt. No., or PO Box No.* 2000 S. Robertson Blvd #215
*City, State, ZIP+4®* Los Angeles CA 90034

**PS Form 3800, April 2015** PSN 7530-02-000-9047 **See Reverse for Instructions**

7019 1120 0000 7158 6059

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
**Total Postage and Fees**
$

Postmark Here

*Sent To* William K. Spencer,
*Street and Apt. No., or PO Box No.* 2330 E. Del Mar Blvd, #111
*City, State, ZIP+4®* Pasadena CA 91107

**PS Form 3800, April 2015** PSN 7530-02-000-9047 **See Reverse for Instructions**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

27489 Agoura Rd., Ste. 102, Agoura Hills, CA 91301

A true and correct copy of the foregoing document entitled (*specify*):   AMENDED
 NOTICE OF MOTION FOR MOTION LEAVE TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES;
 DECLARATION OF RICHARD J. USS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 03/23/2021          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Carolyn A Dye (TR) - trustee@cadye.com, Jennifer H Wang - jwang@cookseylaw.com, Daniel King - dking@theattorneygroup.com,  United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 03/23/2021          , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Sheri Bluebond - 255 E. Temple Street, Suite 1534 /Courtroom 1539, Los Angeles, CA 90012

William K Spencer - 2330 E Del Mar #111, Pasadena, CA 91107

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

03/23/2021    Shauna Wilcox
Date          Printed Name                              Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**